IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JAMES M. BEARDEN and ) | |
| SUSAN J. BEARDEN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 3:11-CV-1115-WKW |
| ) | [WO] |
| McNEAL & DOUGLAS, LLC, ) | |
| MARRELL J. McNEAL, ) | |
| ATTORNEY AT LAW, P.C., ) | |
| MARRELL J. McNEAL, and ) | |
| JAMES BOYD DOUGLAS, JR., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the court are the Motion to Dismiss of Defendants Marrell J. McNeal, Attorney at Law, P.C., Marrell J. McNeal, and McNeal & Douglas, LLC (Doc. # 6), and Plaintiffs' Response in Opposition (Doc. # 14). After careful consideration of the arguments and the relevant law, Defendants' motion is due to be denied.

## **I.  JURISDICTION AND VENUE**

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1332. Personal jurisdiction and venue are not contested, and there are adequate allegations in support of both.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard articulated by Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain sufficient factual allegations, "accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The standard requires the plaintiff to plead "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the plaintiff's claim.  *Twombly*, 550 U.S. at 556.

## III.  BACKGROUND

When considering a motion to dismiss for failure to state a claim, the court must accept "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Thus, construing the facts alleged in the light most favorable to Plaintiffs, the pertinent factual background is as follows.

Plaintiffs James and Susan Bearden are former residents of Auburn, Alabama, and former clients of Defendants.  Plaintiffs have asserted claims against four Defendants. Two are individuals:  Mr. James Boyd Douglas, Jr. and Mr. Marrell J.

McNeal. Mr. Douglas and Mr. McNeal were formerly law partners in the law firm McNeal & Douglas, LLC ("McNeal & Douglas"). McNeal & Douglas is the third Defendant, and the fourth is the professional corporation under which Mr. McNeal now practices law, Marrell J. McNeal, Attorney at Law, P.C.

For several years before the incidents giving rise to this claim, Plaintiffs used Defendants as their attorneys for a variety of legal matters, including various business transactions, employment matters, and a bankruptcy filing. (Doc. # 1, ¶ 15.) In May 2008, Plaintiffs moved to Georgia but continued to call upon Defendants for legal work. (Doc. # 1, ¶ 16.)

When Plaintiffs sold their home in Auburn, Alabama (the "Home") in May 2008, Defendants served as the closing attorneys for the sale. (Doc. # 1, ¶ 19.)[1] Defendant McNeal & Douglas was the settlement agent. (Doc. # 1, ¶ 20; Doc. # 12, ¶ 19.) The Home's sale price was $715,000, and approximately $663,000 of that sale price was to retire the single mortgage held by Bank of America (the "Bank") under which Plaintiffs were indebted on the Home. (Doc. # 1, ¶ 18.) Defendants represented that necessary actions had been taken to pay off the mortgage. (Doc. # 1, ¶ 23.)

In fact, the mortgage was not paid out of the proceeds of closing. Defendant

---

[1] It is unclear which of the four named defendants served as "closing attorneys."

Douglas, by his own admission in his Answer in this case, diverted the mortgage payoff and "converted the funds for his personal use." (Doc. # 12, ¶ 25.) Meanwhile, Plaintiffs believed that the mortgage had been paid off. (Doc. # 1, ¶ 30.) When they continued to receive mortgage statements from the Bank in the months following the sale, Plaintiffs contacted Mr. Douglas, who told them that the Bank had erred and that he was in communication with the Bank to rectify the error. (Doc. # 1, ¶ 31.) More than a year after the sale, Mr. Douglas told Plaintiffs that he reached a settlement with Bank of America in the matter of the mortgage payoff. (Doc. # 1, 33.)

In reality, there were no claims against Bank of America, and there was no settlement. It was all part of the ruse concocted by Mr. Douglas. In December 2009, Plaintiffs signed a Mutual Release and Receipt purporting to settle claims against the Bank. (Doc. # 1, ¶ 34; Doc. # 12, ¶ 34.) Mr. Douglas accompanied the release with $35,000 he later wired into Plaintiffs' bank account and a check drawn on the escrow account of McNeal & Douglas, LLC (Doc. # 1, ¶ 35; Doc. # 12, ¶ 35), money he told them represented the Bank's settlement of their claims. (Doc. # 1, ¶ 33; Doc. # 12, ¶ 33.)

Plaintiffs continued to receive mortgage statements from the Bank – even after the sham settlement in December 2009 – showing an outstanding mortgage balance and payments made on the mortgage, despite the fact that Plaintiffs were not making

any such payments.  (Doc. # 1, ¶ 37.)  When Plaintiffs contacted Mr. Douglas, the man they believed had already resolved this issue in their favor, about the situation, he told them that the Bank had violated the terms of its settlement with Plaintiffs and that he would file suit against the Bank on Plaintiffs' behalf to enforce said terms.  (Doc. # 1, ¶ 36.)

In the meantime, Plaintiffs found themselves unable to refinance the mortgages they carried on their home in Georgia because their mortgage with Bank of America remained on the books.  (Doc. # 1, ¶ 39.)  Consequently, Plaintiffs continued to carry two interest-only mortgages on their home in Georgia as well as the Bank of America mortgage remaining on the Home they sold in 2008.  (Doc. # 1, ¶ 40.)  The situation adversely impacted their credit score.  (Doc. # 1, ¶ 40.)

## IV. DISCUSSION

### A. <u>Applicability of the ALSLA</u>

Faced with what it perceived as a crisis "threaten[ing] the delivery of legal services to the people of Alabama," the Alabama Legislature enacted the Alabama Legal Services Liability Act ("ALSLA") "to establish a comprehensive system governing all legal actions against legal services providers."  Ala. Code. § 6-5-570.  In so doing, the legislature created a single claim under Alabama law that plaintiffs may bring against legal services providers for damages arising out of the provision of

legal services: a legal service liability action. Ala. Code. § 6-5-573. A legal service liability action applies to "any action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal services provider." Ala. Code § 6-5-572(1).

The ALSLA covers all claims, "whether in contract or in tort and whether based on an intentional or unintentional act or omission." It embraces every legal theory of recovery, "whether common law or statutory." *Id.* In short, it applies wherever there is an attorney-client relationship and the client brings a claim regarding services provided pursuant to that relationship. *See Fogarty v. Parker, Poe, Adams & Bernstein, L.L.P.,* 961 So. 2d 784, 788 (Ala. 2006) (holding that the ALSLA applies to "claims against legal-service providers that arise from the performance of legal services"); *Brackin v. Trimmier Law Firm*, 897 So. 2d 207, 229 (Ala. 2004) ("An attorney-client relationship is an essential element of a claim under the [ALSLA] . . . ."). It does not, however, preclude claims against attorneys not arising out of legal services. For example, in *Line v. Ventura*, 38 So. 3d 1, 11 (Ala. 2009), the defendant – an attorney – undertook a fiduciary obligation entirely separate from any legal representation when he agreed to participate in a conservatorship by cosigning checks and helping manage conservatorship funds. Thus, the ALSLA did not preclude claims

of negligence, wantonness, and breach of fiduciary duty brought against the defendant for his conduct relating to the conservatorship. *Id.*

Based on the pleadings alone, it is not clear whether and between which parties an attorney-client relationship existed. Similarly, it is not clear when such a relationship existed and whether, if such a relationship did exist, the subject of the claim arises from one continuous representation or a series of representations on discrete matters. Plaintiffs allege that at all relevant times there was an attorney-client relationship between Plaintiffs and Defendants (Doc. # 1, ¶ 25) and that a contract existed between them (Doc. # 1, ¶ 19), yet the terms of that contract and whether it involved only legal services remain unclear.

It is plausible – based on Plaintiffs' allegations – that an attorney client relationship existed between Plaintiffs and any combination of the individual Defendants and the business entity Defendants. It is also plausible that certain claims in this case against certain Defendants arise out of a fiduciary obligation entirely separate from any legal representation, as in *Line v. Ventura*, even if the parties were once engaged in an attorney-client relationship. In light of Defendant Douglas's admissions to the underlying criminal conduct and the factual allegations supporting both Plaintiffs' claims under the ALSLA and those at common law, continuing to discovery is appropriate. *Cf. Sessions v. Espy*, 854 So. 2d 515, 523–24 (Ala. 2002)

(finding a genuine issue of material fact precluding summary judgment in an ALSLA case where record evidence conflicted as to whether an attorney-client relationship existed). Plaintiffs have pleaded facts raising "a reasonable expectation that discovery will reveal evidence" of their claims. *Twombly*, 550 U.S. at 556. The suggestions raised by Plaintiffs' allegations make their complaint legally sufficient with respect both to the ALSLA claim (Count XIII) and the common law claims, and this court must therefore deny the motion to dismiss.

**B.     Operation of the ALSLA Statute of Limitations**

Defendants also argue that Plaintiffs' claims are due to be dismissed because they were brought after the ALSLA's statute of limitations had expired. As set forth above, Plaintiffs have pleaded facts sufficient at this stage to support claims under both common law and the ALSLA, and Defendants raise no argument that a statute of limitations applies to the common law claims. Thus, the court construes the statute of limitations argument as applying only to Count XIII. Because Plaintiffs have pleaded facts sufficient to suggest that the ameliorative discovery provision applies, the motion to dismiss Plaintiffs' ALSLA claim is due to be denied.

The ALSLA incorporates by reference the saving provision for fraud actions found in Ala. Code § 6-2-3. Ala. Code § 6-5-574(b). Under the saving provision, if a defendant has acted fraudulently to conceal a claim, the statute of limitations

applicable to that claim will not begin to run until the plaintiff discovers, or should have discovered, the claim. Ala. Code § 6-2-3; *see also Dennis v. Northcutt,* 887 So. 2d 219, 221 n.4 (Ala. 2004) (acknowledging that the saving provision applies to actions under the ALSLA).

Defendants' argument that the statute of limitations bars Plaintiffs' claim cannot support granting the motion to dismiss. If indeed the ALSLA applies based on the existence of an attorney-client relationship, Plaintiffs' allegations – particularly those concerning the concocted claims against Bank of America – plausibly suggest that Defendants fraudulently concealed the admitted conversion of Plaintiffs' funds. (Doc. # 12, ¶¶ 25–29.)

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' complaint alleging both common law and statutory causes of action is legally sufficient. Accordingly, it is ORDERED that Defendants' Rule 12(b)(6) Motion to Dismiss (Doc. # 6) is DENIED.

DONE this 26th day of September, 2012.

         /s/ W. Keith Watkins
       CHIEF UNITED STATES DISTRICT JUDGE